UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ANTHONY W. BROOM,**

    Petitioner,

v.                                             Case No. 8:83-cv-135-MSS-TGW

**SECRETARY, DEPARTMENT OF CORRECTIONS,**

    Respondent.
_____/

**O R D E R**

In 1983, Broom petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 and challenged his state court conviction for second-degree murder. (Doc. 25-2 at 34–43) Judge George C. Carr adopted Judge Thomas G. Wilson's report and recommendation to deny the petition. (Doc. 25-2 at 57–63, 65–66) The court of appeals affirmed. (Doc. 25-2 at 144–45) Thirty-eight years later, Broom moves for relief under Rule 60(b)(3), Federal Rules of Civil Procedure, and contends that new evidence proves that counsel for the Respondent committed fraud on the court. (Doc. 21 at 10–21) After reviewing the motion, the response (Doc. 24), the reply (Doc. 21), and the relevant record, the Court **DENIES** the motion.

**FACTS**

In 1981, a jury found Broom guilty of second-degree murder with a firearm, and the trial court sentenced him to life in prison. (Doc. 25-2 at 7–10) Broom appealed, and the state appellate court affirmed. (Doc. 25-2 at 30)

In 1983, Broom filed his federal habeas petition and asserted that the trial court violated his federal right to due process because the prosecutor failed to prove a corpus delicti

1

to support the conviction. (Doc. 25-2 at 34–43) The Respondent argued that sufficient evidence proved Broom's guilt. (Doc. 25-2 at 50–53)

Judge Wilson recommended denying the petition as follows (Doc. 25-2 at 58–62) (record citations omitted):

> The evidence, viewed in the light most favorable to the prosecution, showed that the victim was shot to death in the early morning hours in the petitioner's motel room. The gun involved in the shooting was owned by the petitioner. When the police arrived shortly after the shooting, the petitioner and the victim were the only people in the room, and there was no evidence that anyone else was present at the time of the shooting. Indeed, the victim was wearing only jeans and pantyhose, while the petitioner was wearing only pants.
>
> The petitioner and the victim had been dating for several months, but the victim was planning to break up with the petitioner. Moreover, the victim had been dating another individual, and they had had general discussions about getting married.
>
> When the police arrived and asked the petitioner what had happened, he said he did not know. Similarly, in a telephone call to the victim's sister later that morning, the petitioner, after advising that the victim was dead, stated that he did not know how it happened. The jury could reasonably conclude that these statements were preposterous and were covering a guilty mind.
>
> Based upon the foregoing evidence, the jury could rationally conclude, beyond a reasonable doubt, that the petitioner killed Charlotte Martz by an act which was "imminently dangerous to another and evincing a depraved mind regardless of human life" and thus was guilty of second-degree murder.
>
> The petitioner argues that the victim's death may have been due to suicide, accident, or the act of a third person. These speculative possibilities did not preclude the jury from rationally finding the petitioner guilty of second-degree murder beyond a reasonable doubt.
>
> In the first place, there is no evidence supporting a theory of suicide, accident, or murder by a third party. The petitioner did not testify and did not present evidence in support of any of these theories. Moreover, upon inquiry by the police and the victim's

sister, the petitioner stated he did not know how the shooting occurred. His responses, accordingly, do not support theories of suicide, accident or a third-party murderer.

Moreover, there was evidence in the record from which the jury could reasonably find that the alternative theories were not realistic possibilities. Thus, there was no evidence presented which suggests that the victim was likely to commit suicide. To the contrary, the jury could reasonably find that the victim was employed and had an eleven-year-old daughter whom she was raising; that she had both short and long-term plans; that she had marriage prospects; and that when she left home that evening she was in good spirits and said, "See you later," to her mother. In sum, viewing the evidence in the light most favorable to the prosecution, it is not reasonable to think that the victim committed suicide.

Similarly, the evidence does not support the theory that the victim accidentally killed herself playing with the gun. Initially, it is noted that the victim did not own a gun and did not like guns. Further, the gun involved in this case could not be fired simply by pulling the trigger. Rather, it had to be manually cocked by pulling the hammer before it could be fired by pulling the trigger. The suggestion that the victim accidentally shot herself is also rendered unlikely by the fact that the victim was right-handed and was shot in the left side of the head. Moreover, the path of the bullet was horizontal and toward the front of the head. The jury could reasonably find that it would be very unlikely that the victim would accidentally shoot herself from the position indicated by the wound. Based upon these factors, as well as the lack of any evidence affirmatively indicating that the victim accidentally killed herself, the jury could reasonably discount the proposition that the victim accidentally shot herself.

The suggestion that the victim was murdered by a third party is probably the most speculative theory of all. Thus, there is no evidence indicating that the petitioner and the victim were surprised by an intruder. Further, their state of undress makes it very unlikely that they had a guest in the room. Accordingly, the jury could reasonably disregard the suggestion that the victim was murdered by an unidentified third party.

Judge Carr adopted the report and recommendation (Doc. 25-2 at 65–66), and the court of appeals affirmed. (Doc. 25-2 at 144–45)

In 1985, Broom moved for post-conviction relief asserting ineffective assistance of counsel (Doc. 25-2 at 551–62), and the post-conviction court denied relief. (Doc. 25-2 at 572–73) Broom appealed, and the state appellate court affirmed. (Doc. 25-2 at 621–22) In 1986, Broom filed a successive motion for post-conviction relief (Doc. 25-2 at 574–93), and the post-conviction court denied relief. (Doc. 25-2 at 594)

In 1986, Broom also filed a petition for a writ of habeas corpus in state court. (Doc. 25-2 at 359) Even though a trial court in Polk County, Florida entered the judgment of conviction, Broom filed the state habeas petition in a post-conviction court in Pinellas County, Florida. (Doc. 25-2 at 358) The post-conviction court granted the petition as follows (Doc. 25-2 at 359–65) (state court record citations omitted):

> Broom's Arguments: It is Broom's contention that, when taken as a whole, the procedures utilized by the investigating agency and the Office of the State Attorney pre-indictment, during the grand jury presentation, and pre-trial, together with the evidence or lack of evidence adduced at trial, have resulted in a fundamental deprivation of due process rights and hence habeas corpus should be granted.
>
> The Court's Dilemma: This Court must first acknowledge that it has not looked lightly upon the underlying charge and upon the numerous and varied motions which have been filed by Broom in his quest for post-conviction relief.
>
> The Court must also admit that in situations of this type it is very easy to simply hold a cursory review of the file and determine that Broom has tried and tried again and is merely reshuffling the same old deck of cards.
>
> This Court, in no way, is attempting to indicate that any of the prior judicial rulings whether at the trial or appellate level are incorrect or inaccurate. However, this Court does feel that each separate issue raised by Broom at the trial and appellate levels only constitutes a part of the overall picture and that it is obligated at this time to view the entire circumstances as they relate to this petition. Additionally, while Broom has certainly developed some skill in pleading matters he wishes to raise, he

still is not an attorney and the Court should not restrict him to strict compliance with the rules.

This Court further states that it is not considering the issue of Broom's actual guilt or innocence in this cause. It is only considering whether, when taken as a whole, the totality of the circumstances indicates that the conviction was based upon a fundamental deprivation of due process rights. *United States v. Kastenbaum*, 613 F.2d 86 (5th Cir. 1980).

In order to make this determination, it is necessary to examine each individual step in the process towards the ultimate conviction. . . .

    1.    <u>The Probable Cause Affidavit:</u>  The affidavit sworn to by Officer Woodard contains the following language: ". . . defendant and victim . . . became involved in an argument . . . and a few minutes later a loud 'bang' was heard by witness, Barbara Singh and her husband, Kumar Singh." The implication of the statements is to indicate that there was an argument between the deceased and the defendant, which argument was followed by a shot. The statements of the Singhs clearly reflect that this is not true, and that furthermore neither of them perceived the bang to be a gunshot. The affidavit also states: ". . . the defendant picked a . . . revolver off the floor . . . and stated 'there's the gun' . . . ." At the bond hearing, held on June 25, 1981, Officer Woodard indicates that the affidavit is incorrect as to the Singhs' statements as well as to the statement alleged to have been made by the defendant. To couch the probable cause affidavit in the language used is clearly to manipulate the facts in order to establish probable cause for a charge of first-degree murder.

    2.    <u>The Grand Jury Hearing:</u>  The list of witnesses who testified before the grand jury was never given to defense counsel, despite the comments by the State that there was no objection to providing same. However, the deposition of Officer Woodard taken on September 28, 1981, gives us some idea of who was present. She confirms that the medical examiner was not called to testify before the grand jury. This view appears to have been confirmed in that during the motion hearings, the State did not deny defense counsel's comment that defense counsel believed the medical examiner had not testified. Would this testimony have made a difference to the grand jury? No one can positively state, but based upon his trial testimony, it certainly would have been valuable and could have given to the

grand jury the only concrete view of the circumstances relevant to the homicide, especially as it relates to possible powder burns on the deceased's hand and the inability to determine whether the wound was or was not self-inflicted.

Thereafter, in the deposition transcript, Officer Woodard indicates that Ora Lee Eubanks (the deceased's sister), the deceased's brother, Mary Prochaska (a friend of the deceased), and Ted Shackleford (the bouncer at Liquor Mart) testified. From reviewing the trial testimony of these individuals, it is apparent that none had actual knowledge of the homicide, although some could testify to what occurred earlier in the evening and others could only testify as to the state of mind of the deceased and prior difficulties which the deceased had with the defendant.

3. <u>The Investigative Stage:</u> The actions of the investigating law enforcement agency fell far below normal standards and resulted in the loss of evidence which could have been exculpatory and promoted possible evidence which could have been false and prejudicial. The matter of the incorrect and possibly perjured complaint [and] arrest form has already been discussed. Upon arriving at the scene, the officers required the defendant to pick up the weapon and toss it across the room. This required him to handle an alleged murder weapon and then potentially destroy[ ] prints which may have indicated the deceased fired the gun. Additionally, the officers then handled the weapon, tucking it into one officer's waistband, removing it and replacing it for photographic purposes, replacing it in the waistband, taking it to the station and unloading it, and subsequently sending it off for fingerprint analysis.

Tests which were performed either had little bearing on the case (such as a paraffin test[ing] on the spent cartridge) or did not occur until such time as any evidentiary value had been lost (such as not preserving the gun for fingerprint purposes and not doing scrapings of the deceased's hand until the autopsy) or weren't the type needed to ascertain probative information (such as neutron [and] paraffin tests on both the decedant's and defendant's hands).

<u>The Court's Perspective:</u> Habeas corpus is not a remedy to correct procedural or evidentiary errors. The purpose of this remedy is [to] deal with constitutional errors that have resulted in a deprivation of due process rights. Broom has raised certain issues [none] of which, standing alone, would be sufficient to

establish such a substantive due process violation as is required. But this Court must state that it was overwhelmed with the totality of the circumstances. As a general rule, the criminal justice system is designed with internal safeguards to correct any possible mistakes or errors or due process violations.

An arrest affidavit must be presented to a committing magistrate for a probable cause determination. That must presume that the facts contained therein are not perjured. A similar standard is applied to search warrant affidavits. In *Franks v. Delaware*, 98 S. Ct. 2674 (1978), the court discussed the conditions which must be met before a defendant was entitled to an evidentiary hearing. At page 2684, the court states:

> There must be allegations of deliberate falsehood or of reckless disregard for the truth and those allegations must be accompanied by an offer of truth.

> [I]f these requirements are met, and if, when material that is subject of alleged falsity or reckless disregard is set to one side, there remains content . . . to support . . . probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled . . . to his hearing.

In our system, however, it is possible to correct problems with such probable cause affidavits by submitting the issues to a grand jury for an independent and informed determination of the case.

A definitive statement of the history, jurisdiction, rights, and duties of a grand jury is contained in *In re Report of Grand Jury*, 11 So. 2d 317 (Fla. 1943). The court discusses the fact that the grand jury became an "independent instrument . . . to uphold the liberty of the people and act as a buffer between them and the crown." At page 318, the court states:

> When they find that the law has been violated, it is their duty to indict but when they find charges made to be without foundation, it is as much their duty to exonerate as it is to indict in the first instance. It is by dispatching in a fair and impartial way matters brought to their attention that the grand jury becomes the buffer between the free citizen and arbitrary power.

The Fifth Amendment clause of both the Florida and the United States Constitutions provide for utilization of the grand jury. In *Costello v. United States*, 76 S. Ct. 406 (1956), the Court discusses the history of the grand jury system and states that its adoption in our constitution as the sole method for preferring serious crimes "shows the high place it held as an instrument of justice." And in *United States v. Sears, Roebuck & Co., Inc.*, 719 F.2d 1386, 1391 (9th Cir. 1983), the Court states:

> Implicit in this clause is the guarantee that a defendant will be indicted only upon the informed and independent determination of a legally constituted grand jury.
>
> Dismissal of an indictment is therefore only warranted on constitutional grounds if prosecutorial misconduct has undermined the grand jury's ability to make an informed and objective evaluation of the evidence presented to it.

This Court is also cognizant that it is not the job of a prosecutor to present evidence which would negate guilt, as guilt or innocence is not the function of the grand jury. *United States v. Lasky*, 600 F.2d 765, 768 (9th Cir. 1979). Hearsay and other inadmissible evidence may be presented to a grand jury for its consideration and in fact, an indictment may be valid even if it is based solely on hearsay. *Costello*, *supra.*

But as the court continued to discuss in *In re Report of Grand Jury*, *supra.*, "Public office is the most important trust democratic government vests in the citizen." Justice Chapman, in his opinion concurring specially adds a caution.

> The tremendous power by law conferred upon a grand jury should not under any condition become a vehicle of oppression or the instrumentality whereby the group in control should by their action through the grand jury promote private interests . . . .

This caution is obviously more important when the power of the grand jury is coupled with the power of the State. Where, as here, the only matters presented to the grand jury were matters which by hearsay and innuendo established motive for the homicide

and the only unbiased view of the physical evidence, that of the medical examiner, was kept from the grand jury, there was no opportunity for them to make an informed and objective evaluation as to whether an indictment for first-degree murder should lie.

The ultimate end-all and cure-all in theory is the jury trial itself. There is no way of knowing what prejudice may have occurred as a result of the matters previously discussed. The defendant had been in custody continuously since the offense (less one day); a jury was advised the charge, brought on the indictment, was first-degree murder; the defendant was obligated to defend against a capital offense.

This Court is well aware of the law as previously referred to herein and with the law as it relates to presumptions of validity. But this Court also feels as did Chief Justice Warren, when he wrote the opinion in *Mesarosh v. United States*, 77 S. Ct. 1, 8 (1956).

> If [the Court] has any duty to perform . . . it is to see that the waters of justice are not polluted.

And citing another decision:

> The fastidious administration of justice requires the court to make certain that the dying of justice be made so manifest that only irrational or perverse claims of its disregard can be asserted. *Communist Party of U.S. v. Subversive Activities Control Bd.*, 351 U.S. 115 (1956).

Broom's claims are neither irrational nor perverse. To say that the waters of justice in this case are polluted, is simply to view the totality of the case. The totality of the circumstances clearly indicates serious due process violations, which have jeopardized the search for justice in this case. Whatever personal feelings affected Officer Woodard, whatever noble reasons directed the actions of the State, whatever was being sought by anyone . . . justice was not found.

The State of Florida appealed the order granting relief, and the state appellate court reversed because the post-conviction court in Pinellas County, Florida lacked jurisdiction to

vacate the judgment in Polk County, Florida. *State v. Broom*, 523 So. 2d 639, 641 (Fla. 2d DCA 1988).

In 1989, the Florida Parole Commission approved Broom's release on parole. (Doc. 25-2 at 149–55) In 1996, a parole officer filed an affidavit alleging that Broom violated the conditions of his parole by driving under the influence of alcohol, refusing to submit to a breathalyzer test, and disobeying traffic laws. (Doc. 25-2 at 157–60, 162, 164)

After he returned to prison, Broom filed successive post-conviction motions requesting relief based on the lack of sufficient evidence before the grand jury (Doc. 25-2 at 174–51, 398–541, 672–708, 817–30), the post-conviction court denied relief (Doc. 25-2 at 259–60, 469–541, 858), and the state appellate court affirmed. (Doc. 25-2 at 391, 542–47, 803, 884)

Also, Broom applied for leave to file a second or successive federal petition for a writ of habeas corpus in the court of appeals, and the court of appeals denied the application. *See In re Broom*, No. 17-14425 (11th Cir. Oct. 23, 2017); *In re Broom*, No. 14-12194 (11th Cir. June 4, 2014); *In re Broom*, No. 13-14693 (11th Cir. Nov. 13, 2013); *In re Broom*, No. 13-13231 (11th Cir. July 31, 2013).

*In re Broom*, No. 13-13231 at *2–*3, rejected Broom's claims based on alleged perjury before the grand jury as follows:

> For Broom's second claim, Broom asserts that, to obtain Broom's indictment on the murder charge, the government knowingly used perjured testimony from the lead detective in Broom's case. Relatedly, for Broom's third claim, Broom argues that the trial court did not have jurisdiction to hear his case because the government obtained Broom's indictment by perjured testimony. Although Broom's argument is not clearly supported by any evidence that he provides, Broom points to verbiage from another pleading that purportedly signifies that the government admitted that Broom's indictment was secured by false testimony from the lead detective. This evidence allegedly

10

did not surface until after Broom's federal habeas relief was denied.

Even assuming for the sake of discussion that the lead detective's testimony at the indictment phase was false in some respect, Broom does not point to any judicial finding that the indictment underlying the conviction that he is now serving was based on false information, perjury, or government misconduct. *Cf. United States v. Hyder*, 732 F.2d 841, 845 (11th Cir. 1984) (explaining that, absent a judicial finding of perjury or government misconduct at the indictment phase, an indictment is not flawed simply because it is based on testimony that later may prove to be questionable). Furthermore, any defect in the lead detective's testimony, at the indictment phase, does not impugn any independent evidence presented to obtain the pertinent indictment. *Cf. United States v. Calandra*, 414 U.S. 338, 345 (1974) ("[A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence[.]"). Most important, any defect in the lead detective's testimony, even at the indictment phase underlying the subject conviction, does not invalidate the testimony and other evidence, in support of Broom's conviction, presented and admitted at his trial. *Cf. United States v. McIntosh*, 704 F.3d 894, 901–03 (11th Cir. 2013) (holding that a conviction remained in effect, and a district court retained jurisdiction, despite the dismissal of the indictment), *petition for cert. filed*, No. 12-10466 (U.S. May 22, 2013). Thus, Broom's claims that are based on allegedly false testimony at the indictment phase, even if taken as true, would fail to show that no reasonable factfinder would have found Broom guilty at trial. Therefore, Broom's second and third claims do not provide a basis for a second or successive § 2254 petition.

Broom's Rule 60(b) motion in this case followed. (Doc. 21)

## ANALYSIS

Over thirty-five years after Judge Carr entered an order denying Broom's federal habeas petition, Broom moves under Rule 60(b)(3) for relief from the order. (Doc. 21) He contends that, in his federal petition, he asserted that the prosecutor violated his federal right to due process by obtaining the indictment with fabricated testimony by a police officer. (Doc. 21 at 17) He contends that the Respondent committed fraud on the court by responding that

11

the prosecutor did not violate federal due process because no misconduct occurred. (Doc. 21 at 17) He further contends that the record, supported by the post-conviction court's order granting relief, demonstrates that the prosecutor violated his federal right to due process. (Doc. 21 at 17–20)

"[S]uccessive petition restrictions contained in the [Antiterrorism and Effective Death Penalty Act] amendments to § 2244(b) apply to Rule 60(b) proceedings, even where those proceedings seek to amend a judgment that became final before the effective date of the amendments." *Felker v. Turpin*, 101 F.3d 657, 661 (11th Cir. 1996). "The Supreme Court held [ ] that a Rule 60(b) motion is to be treated as a successive habeas petition if it: (1) 'seeks to add a new ground of relief;' or (2) 'attacks the federal court's previous resolution of a claim *on the merits*.'" *Williams v. Chatman*, 510 F.3d 1290, 1293–94 (11th Cir. 2007) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005)) (italics in original). "Where, however, a Rule 60(b) motion 'attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings,' the motion is not a successive habeas petition." *Williams*, 510 F.3d at 1294 (quoting *Gonzalez*, 545 U.S. at 532). Because Broom attacks a defect in the integrity of the proceedings by asserting that the Respondent committed fraud on the court, the Court does not construe the *pro se* Rule 60(b) motion as a successive petition. *Zakrzewski v. McDonough*, 490 F.3d 1264, 1267 (11th Cir. 2007).

Under Rule 60(b)(3), the Court may relieve Broom from the final order for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." However, a party must seek relief under Rule 60(b)(3) no later than one year after entry of the judgment. Fed. R. Civ. P. 60(c)(1) ("A motion under Rule 60(b) must be made within a reasonable time — and for reasons (1), (2), and (3) no more than a year after

12

the entry of the judgment or order or the date of the proceeding."). Judge Carr denied Broom's federal habeas petition on March 12, 1985, and judgment entered on March 13, 1985. (Doc. 25-2 at 65–68) Broom placed in the hands of prison officials for mailing his Rule 60(b) motion on February 13, 2023. (Doc. 21) Consequently, his motion under Rule 60(b)(3) is untimely.

Broom contends that he did not discover the post-conviction court's order granting relief until after Judge Carr denied his federal petition and argues that his Rule 60(b) motion, based on the order granting relief, is therefore timely. (Doc. 21 at 20) Judge Carr denied the federal petition on March 12, 1985 (Doc. 25-2 at 65–68), and the post-conviction court entered the order granting relief on July 28, 1987. (Doc. 21-1 at 23–30) Under Rule 60(b)(2), the Court may grant Broom relief for "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." However, a party must also seek relief under Rule 60(b)(2) no later than one year after entry of the judgment. Fed. R. Civ. P. 60(c)(1). Consequently, his motion under Rule 60(b)(2) is also untimely.[1]

Broom contends that, in his federal petition, he asserted that the prosecutor violated his federal right to due process by obtaining the indictment with fabricated testimony by a police officer. (Doc. 21 at 17) He further contends that the Respondent committed fraud on the court by responding that the prosecutor did not violate federal due process because no misconduct occurred. (Doc. 21 at 17) The record refutes both assertions.

In his federal petition, Broom raised one ground asserting that the trial court violated his federal right to due process because the prosecutor failed to prove a corpus delicti in

---

[1] The post-conviction court entered the order granting relief in 1987 (Doc. 21-1 at 23–30), the state appellate court reversed the order in 1988, and Broom filed his Rule 60(b) motion in 2023. (Doc. 21) *Broom*, 523 So. 2d at 639. Broom fails to explain why he waited decades to raise his claim based on the now reversed order granting relief.

13

support of guilt. (Doc. 25-2 at 37–38) The Respondent argued that sufficient evidence proved guilt. (Doc. 25-2 at 50–53) Neither Broom nor the Respondent addressed a federal due process claim based on fabricated testimony before the grand jury. Because the record refutes Broom's allegation of fraud, his Rule 60(b) motion fails. *Booker v. Dugger*, 825 F.2d 281, 283–84 (11th Cir. 1987) ("'[C]onclusory averments of the existence of fraud made on information and belief and unaccompanied by a statement of clear and convincing probative facts which support such belief do not serve to raise the issue of the existence of fraud . . . .'") (citation omitted).

Also, at a pretrial hearing, trial counsel moved for disclosure of a transcript of the proceeding before the grand jury or notes taken by the grand jury foreperson, and the prosecutor advised that neither a transcript nor notes existed (Doc. 25-2 at 790–92):

| | |
|---|---|
| [Trial counsel:] | Going now, Your Honor, to the motion to compel transcription and production of the grand jury testimony. |
| [Trial court:] | What is the State's position? |
| [Prosecutor:] | Judge, the grand jury is never — there is no court reporter or tape recording or anything present in the grand jury room; it is physically impossible. We never do have those; it is the practice in the circuit not to record the grand jury testimony. |
| [Trial court:] | All right, sir. Now how do you suppose we dispose of your motion under those circumstances? |
| [Trial counsel:] | Well, I was under the impression that there would be a court reporter on a homicide case, and I know of other cases where it's been done in this jurisdiction. |
| [Trial court:] | But [the prosecutor] represented to you that such is not the case. It would be clearly impossible for me to grant your motion. |

14

| | |
|---|---|
| [Trial counsel:] | Except that I — the Court would consider that I might be able to look at the foreman's notes to determine — the reason I am asking to go beyond the indictment, which I know is not normally done, is because it's come to my attention that I have reason to believe, and I don't know because I haven't seen the witness list of who appeared before the grand jury, but I believe the indictment of first-degree murder was brought back based upon alleged threats, rumors, and hearsay which are not admissible in the court of record. And that the medical examiner who would testify [about] the cause of death was never called before the grand jury, and the medical examiner was never called before the grand jury in my mind, after I have talked to him, because he said he couldn't determine what the cause of death was. It was undetermined whether it was a homicide or whether it was self-inflicted or whatever. And I am having a difficult time with the witnesses in this case because of the animosity and their inability to cooperate. And I think that the foreman probably has notes, and I would like the Court to make an *in camera* inspection of — |
| [Trial court:] | I am not aware of what may exist [ ], and I am not even certain that under the representation made by counsel, that I could require, could properly require production of notes or what have you. But we might be able to better deal with the matter if we first determine if there are any writings in existence because if there are no writings in existence, then clearly the motion could not result in the production of anything. You might inquire [ ]. |
| [Prosecutor:] | Judge, I can answer the question now. |
| [Trial court:] | All right. |

15

| | |
|---|---|
| [Prosecutor:] | The grand jury, each member is handed out tablets to make notes on during the course of their discussions. At the conclusion of the day, all of those are taken up and taken down to the State Attorney's Office and put through a shredder. |
| [Trial court:] | So there [are] no writings? |
| [Prosecutor:] | There [are] no notes, writings, there is nothing about what went on in there except what is in the minds of the individual members of the grand jury. |
| [Trial court:] | All right, sir. Do you accept [the prosecutor's] representation? |
| [Trial counsel:] | I accept [the prosecutor's] representation. |

Because Broom fails to present a transcript of the grand jury proceeding or other "clear and convincing evidence that [the Respondent obtained the judgment] through fraud, misrepresentations, or other misconduct," his Rule 60(b) motion fails. *Waddell v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300, 1309 (11th Cir. 2003).

Lastly, even if Broom demonstrated that the prosecutor obtained the indictment by presenting false testimony to the grand jury, sufficient evidence proved his guilt at trial. Judge Wilson summarized the evidence at trial as follows.[2] The victim died after suffering a gunshot fired by a gun owned by Broom in a motel room rented by Broom. (Doc. 25-2 at 58–59) The victim and Broom were the only people in the motel room, and no evidence proved that anyone else was present when the victim died. (Doc. 25-2 at 59) Before her death, the victim dated Broom for several months, planned to break up with Broom, had begun to date another male, and planned to marry that male. (Doc. 25-2 at 59) Even though Broom told police and

---

[2] Over forty years after the jury trial, a transcript of the trial does not exist.

16

the victim's sister that he did not know how the victim died, the jury rejected Broom's statement based on the circumstances surrounding the victim's death. (Doc. 25-2 at 59) Sufficient evidence rebutted Broom's claim that the victim killed herself, that the victim accidentally shot herself, or another person killed the victim. (Doc. 25-2 at 60–62)

Because competent, substantial evidence at trial supported Broom's conviction for second-degree murder, Broom is not entitled to relief. *See United States v. Flanders*, 752 F.3d 1317, 1333 (11th Cir. 2014) ("[E]ven if Flanders's allegations of misconduct before the grand jury are true, 'the petit jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation.'") (quoting *United States v. Mechanik*, 475 U.S. 66, 67 (1986)). *See also Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) ("[I]llegal arrest or detention does not void a subsequent conviction."); *Anderson v. Sec'y, Dep't Corrs.*, 462 F.3d 1319, 1327 (11th Cir. 2006) ("There is no Supreme Court precedent clearly establishing a constitutional rule that, irrespective of prosecutorial misconduct, an indictment must be dismissed because of perjured grand jury testimony where the perjurious testimony is not repeated before the petit jury which convicts."). Because the claim based on fraud on the court is untimely, Broom's motion for relief (Doc. 21) is **DENIED**.

Broom neither makes a substantial showing of the denial of a constitutional right nor shows that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. Therefore, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**DONE AND ORDERED** in Tampa, Florida on August 14, 2023.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE